The court will proceed to the sixth case, United States v. Featherly. Mr. Bugney. Judge Blum. Good to see you again. It's always good to be here. Always good to be here. May it please the court, my name is Joe Bugney. I'm with Federal Defender Services of Wisconsin. I represent Mr. Featherly. There are very few certainties in life. One, death. The other, taxes. And then that technology is going to change. And with technology's changes, our lives are going to change. And when our lives change, three judges sitting here, and nine in D.C., have to decide how that impacts the Fourth Amendment. And how the Fourth Amendment is going to interact with those changes in technology. And we've seen that. We saw that first in Kylo with infrared technology. Then we saw it in Jones with GPS technology. And we saw it in Riley with his cell phones and their ubiquity. And today, Mr. Featherly, out of a small trailer park in Rice Lake, Wisconsin, presents this court with opportunity to rule on how technology has changed with the use of Wi-Fi. That's the question before this court. Now as Holmes says, the life of the law is one of experience. And the experience is showing, and the case law we've cited establishes, that when it comes to Wi-Fi, it's near ubiquitous. Every place you go, from walking down the street here from my hotel to anywhere I go in my neighborhood, the Wi-Fi flashes up. And that Wi-Fi, that ability to go and connect on someone else's network, changes the way that we have to analyze warrants and we analyze probable cause. It doesn't give a higher standard. It just calls for more investigation. And this court gave the first indication of that in the Milan v. Bolin decision. There it said, look, prudential police decisions, you've got to go and check out whether or not it's an open network. Then it said it's a failure of responsible police practice. And those aren't like measured words. Those aren't like, well, you know, you could do it, maybe the best case scenario. Best practices are X. No. A failure of responsible police practice to go out there and just pick up your cell phone and see if a network comes up. If there's an open network, and if so, you need to investigate further. That's the heart of this case. And the reason that you need to investigate further is because you don't have probable cause anymore. The best that the government can offer this court is a case with facts 12 years old and a decision 10 years old out of the Fifth Circuit. That case is both not binding on this court, nor is it really worth any precedent. It would be no different than if I were to come before the court with a case from the cell phones in like 1984, when they were huge and Don Johnson had them driving around Miami. You'd say, bug me, that's actually not the kind of cell phones that we're talking about now. We're talking about mini computers. That's not the kind of Internet access that we're talking about anymore. We're now talking about the ability for everyone in the neighborhood, everyone in that trailer park, everyone that visited that trailer park, everyone on the outside on the street, within 1,000 feet, to be able to connect to Featherly's network. It was responsible police practice and one that they needed to do to go and check out, was it an open network, who else could have had access to it? And the failure to do that cut to probable cause. As we point out on page 20 of our brief, we've got the nice little picture there, what the police were able to do was to take all the Wi-Fi that could have been used, and again, we don't know how many people are using it inside the trailer park, but we know there are probably many. I mean, everybody has cell phones these days. Everybody is hooking up on the Internet, I mean, hooking to the Internet. And in those cases, you were able to eliminate all those other trailers. You were able to eliminate all the interlopers. You were able to eliminate everybody who was a neighbor over to the left and all the other quadrants that it could go towards. And instead, you're able to put it right there in Featherly's home. That's what probable cause is. And when you think that if a judge wouldn't turn away someone who said, you know what, I was able to track it to the modem, and the Wi-Fi signal stretched out, it probably hit about 80 different trailers, which could have been 400 people. So any one of those 400 could have been it, but I want to go and target this guy. Why? What more proof do you have? If it's a failure of responsible police work, if it's the kind that this court criticizes in Milan v. Bolin, if it's the kind that would get someone turned away from a magistrate judge or an Article III judge, it's the kind of investigation that this court has to demand. And the failure to demand it is a failure to recognize the way that technology has changed. And that's what this court has to do. Technology has made it so that it's not good enough to just go in and say, I got to the modem, got to the Wi-Fi, it's probably there. And it's not just for Mr. Featherly that that's the case. It's for Mrs. Milan. It's for all the other people who, when we cited an opening brief, people who had their doors knocked down because they had the open Wi-Fi network. It's for my parents who still don't know how to lock this. It's for everybody who uses this technology and who other people could be hopping onto and using. Your Honors, it's on that basis that I ask that this court reverse and remand. Because that cuts to the core of it. There was not probable cause if they traced the Wi-Fi simply into the modem. Getting to the modem is not enough. Because getting to the modem only gives you less than probable cause. It gives you reason to investigate further, and the government skipped that step. And that's not a step that this court can't demand. That's not a heavy burden that this court will be placing upon all the police everywhere. People are going to throw up their hands like, oh, there goes the Seventh Circuit again, just handicapping us. No. This is the kind of thing, and we've studied in the reply brief, that most officers do. And most times that we have these cases, they go and investigate six times. They even went out to Featherly's trailer. All we're asking for is that when they went out to Featherly's trailer, they take out their cell phone and they look, is there another network? Is it an open network? And advise the court of those conditions. Because those conditions are exactly what a court needs to know. It's what a court wants to know. And that's why here they papered over it. And that papering over of the facts by just claiming, oh, modem means computer, it robs a court of actually making a legitimate determination to say, I don't know, or I want you to do more, or I'm uncomfortable with this. And I thought of this a lot. Everybody owes candor to the court. I owe it to the court, everybody who comes here. And police even heighten when it comes to an ex parte proceeding before a magistrate judge, before any judge. You just have to be, you know, your P's and Q's. You want to be completely candid. I mean, this court has said it in Glover, McMurtney. Look, it robs, and heck, the Supreme Court said it in Franks v. Delaware. It robs the magistrate judge of that opportunity. Now, if I were so lucky as to get a compliment from Judge Kaney, where he says, Mr. Bugney, you know, you always come prepared. Thank you, Your Honor, I appreciate that. He's like, and I assume today you brought your computer. And I'm like, ah, well, I mean, I really want Judge Kaney to still like me and maybe to, you know, forward that compliment. I don't know where it's going to go, but it sounds pretty good. And then I thought, you know what? I brought my stylus, and my stylus operates in conjunction with a computer. So it's actually a computer. And so I would say to Judge Kaney, of course, Your Honor, I brought my computer today because I brought my stylus. And then he asked me, Mr. Bugney, could I see it? What are you rocking these days? iMac, maybe a Surface. Well, awkward pause, stumbling over my words, knowing I now need to go to confession. And then I say, I brought my stylus. It would be completely disingenuous. It would rob both the meaning of that question that Judge Kaney had asked me and would rob my answer and my credibility of everything that it should stand for. Your Honor, to affirm here is to say that's okay. To say that answer, to hold up the stylus and be like, you know what? It's in conjunction with, it's okay. Hopefully he won't ask the follow-up question. But here, Federalese Defense Counsel asked the follow-up question. Where does it really go? And it only went to the stylus. That's all they had. They only had the Wi-Fi. They only had the wireless network. That was it. The failure to go further, the failure to use terms that were readily available, that's a failure of responsible police practice. And because of that, Your Honors, we ask that you reverse and remand. Did the affidavit also contain a reference to the charter account? It did. That's not enough of a thumb on the scale for you? No, no, because the charter account is going to go, is the Wi-Fi. So he would lease it from charter. And so all it did was say, hey, we traced it to this IP address, and this IP address returns to charter. And so that's all it was. So the charter is synonymous with the modem itself. It didn't give them any more. It's just the same amount of information. So Featherly has leased the modem, and the information went to that modem, and then it dispersed out into the ether. Well, so what more? I appreciate the argument you're making on the technological advances. What more would an agent in this kind of a setting need to do? Establish how do you eliminate all the other possible users at the trailer park? You don't need to. I don't think you need to in two ways. So that's why we're not trying to put a millstone around the police. You've got to go and look and first see is it an open network. Okay, let's say it's open, right? You've got to go investigate further. That's what I'm asking. What's investigate further when somebody is operating in a situation with child pornography in a setting such as alleged here?  One, you could look and see who else is using it. So the Stanley case that we cite to in the reply brief, that's what they did. It was a mooch hunter case. And they said, all right, well, who's the real person who's doing this? Who else is hopping on your network? That's easy. That's a directional antenna. It only costs $100 from Radio Shack. So the police could do that. Second thing they could do is go make sure that they can have another download. This was only one download session. It lasted, I think, four hours because it goes, I think, 11 p.m. to 2 a.m. All right, well, it says investigate further, the same thing that the court asked for in Milan v. Boland. And that's all it is, is prudent police procedure. Go on and do a little bit more investigation. And, Your Honors, that's actually what a good judge could ask. You know, hey, you've got to do more. What else could you do here? And the police can say, you know what, we were able to take the directional antenna and we saw that there were four guys who were there. What are those four guys like? Who's living in Featherleafs? Does anybody else have a sex conviction? What else is going on there? That's a responsible police practice that this court would be asking for, and I think that's the modicum of good police work. It's actually what Milan demands. So I think if we were here on a 1983 lawsuit, I'd be on good footing. I'd probably make a lot more money than my current salary, but I think we would have a true reversal here, and then we'd be talking about damages. But instead, I'm coming here in the Fourth Amendment context, and the way to do that is to reverse and remand. All right. All right. Thank you, Your Honor. Thank you, Mr. Quigley. Ms. Altman. Good morning, Your Honors. Mr. Bugney, may it please the Court, my name is Elizabeth Altman, and I represent the United States in this case. Mr. Bugney just told you that how technology is changed is the question before this court. That is not the question before this court. The question before this court, the issue, this case, is a review of the district court's rulings in a Franks case. The question before this court is whether or not the search warrant affidavit contained a false statement. That's the question before this court. The district court said that it didn't, and that factual finding is reviewed for clear error. The district court didn't even go to the remaining steps of the analysis because she specifically found, the district court specifically found, the agent didn't lie. End of story. And I suggest that that's the question for this court, and the court can end its inquiry right there as the district court did. If the court wants to go into the other two factors to be considered in a Franks motion, in the denial of a Franks hearing, the defendant's motion is still not successful. The second thing the defendant would have to show is that the false statements, the alleged false statements, since the district court already found it wasn't there, was made with deliberate or reckless disregard for the truth. The agent in this case testified, and he said that he believed that a computer and the modem fit within the statutory definition of a computer. He testified before the court that he didn't make a mistake. He didn't lie. By definition, there's no way that that could be an intentional false statement. He doesn't even think that he made one, and he didn't make one according to the definition of computer. The third thing the court would then have to consider is whether or not the false statements or omissions were necessary to a finding of probable cause. And that's what the defendant wants you to look at. The defendant wants this court to look at it as a probable cause hearing, not the denial of a Franks hearing. But even if the court looks at it as a probable cause hearing, the defendant still cannot prevail. What the search warrant said, what we knew in the search warrant and what we would still know today, even if the word computer was replaced. Would you get back to this probable cause versus Frank's hearing? How do you see what, what, what's the difference that you have to prove in a Frank's hearing versus a probable cause? Well, to get to, I think that element three of a Frank's hearing, that is whether or not the false statements or omissions were necessary to finding a probable cause. I think you get there in a Frank's hearing, but you first have to show a false statement and that it was made with deliberate disregard. And then you get there in a probable cause hearing. You just say on its face, the search warrant didn't establish probable cause. I think that it's a subset, I guess, of a Frank's hearing. One of the three things you have to find, I submit you don't get there, but I would also argue that even if you do get there, he can't meet that element either. And that's because what we know and what we would still know, even if you replaced the word computer with modem, which is what the defendant claims should have been said, what we would still know is an IP address issued by charter was assigned to the defendant's home through some device, whether it was a modem, whether it was a computer, whichever you want to call it, it was assigned to the defendant's home, not to charter. The second thing we know from the affidavit and that we would still know if the word modem was used instead of computer is that someone using that IP address distribute child pornography to an undercover officer. That is probable cause to get you into that house. There is going to be evidence of child pornography download in that house, whether it's on a modem, whether it's on a computer, some other device, the download of the child pornography has been tracked to that residence. And that establishes probable cause to talk about three of the, I guess, criticisms or things that the defendant says could be done, should be done. First of all, the defendant suggests and list cases where agents went to a residence to determine whether or not the wireless connection was secured or unsecured. That's all well and good. And,  when I mentioned the Milan case in a minute, what happened in this case is the downloads were in May of 2014, May 5th of 2014. By the time the officers get their subpoenas, do their investigation, go to the residence for the first time, it is June of 2014, six weeks later. In many cases, it doesn't happen within six weeks. This court handled stillness cases where cases are sometimes a year later, you know, 18 months later by the time they get to the residence, there is absolutely no way an officer who goes out with his device or to determine whether or not the wireless connection is secured, is going to know the status of that connection six weeks earlier. He may be able to say on today's date, on June 16th or 19th, is an unsecured wireless connection, but he can't say what it was on June 5th of 2014. So the search warrant would say, on today's date, I determined X. I have no idea what it was on the date of the downloads. That is not helpful. It is not useful to a district court. With regard to Milan, that is not at all similar to this case. It was a case on excessive force and a summary judgment motion. They had another suspect who they, two of the officers testified, believed was the other person who was responsible for the crime, who lived two days before, or I'm sorry, lived two doors down. And in conjunction with the timing argument in Milan, and I think this is perhaps the most important thing, it was the next day from when the threats were obtained and when they got the IP address. So while there is still the possibility that the status of the connection network changed within a day, it's certainly less likely than in the child pornography cases that we see that happen weeks, months, years later. And the last thing I will talk about, actually it's going to be the second to the last, the idea that my stylus here is a computer defies common sense. And the court knows that it is to read search warrant applications, and magistrates and district court judges are to read affidavits given the common sense meaning. Everybody knows that a computer is used to connect to the Internet. Otherwise, it would be a typewriter. And to access to the Internet, you have to have some sort of communications device, and that is what is contained within the definition of computer, and that is the common sense reading of the statute. Nobody is going to be, oh, here's my stylus, it's a computer. That defies common sense. This really truly is the last thing I am going to say, is that I don't think that we get there, but if the court finds for some reason that the search warrant did not establish probable cause because the word computer should have been replaced with modem, the agents acted in good faith in executing it. The magistrate court who issued and signed the warrant said so. The district court didn't even get there because the district court found no lie, and the agents acted appropriately. And for all of the reasons I've discussed, Your Honors, I would ask the court to affirm the defendant's conviction. All right. Thank you, Ms. Altman. Your Honor, I just want to be very clear on the technology. I tried to strip it out of the brief so that we could give you the fundamental principles. But the Internet doesn't go, they don't actually have an IP address to the computer. The IP address goes to a modem. That's exactly what Charter told them. So they don't actually know that there's going to be evidence inside the house. Evidence is on a computer. The modem contains nothing. You can't listen to a song on a modem. You can't look at anything on a modem. It just processes it. It's just a portal. And the way you understand that is going to decide where the probable cause is. Because if it's on a computer, Pareto, Wenz, all those cases, yeah, you get the search warrant, there's probable cause. But it only goes to a modem. That just means it's one of the portals. There's nothing of evidentiary value there. And that's a critical point when evaluating this case. The other thing, I think, just to talk to Judge Keeney's question, probable cause and Franks, look, they're one and the same. We're all practical people here. If it didn't matter for probable cause, I'm not arguing this case. And if it didn't matter for probable cause, then why paper over it and not use the word modem? Granted, my stylist question might have been a little awkward, but I didn't want to carry up here, like one, I'd rob my kids of the wireless for a day, but I brought up my modem. It would be a little awkward. But the stylist has the exact same logic that the government would have this court adopt. Oh, it's in conjunction with? It's the same thing. We use precise terms because they have meanings. And those meanings convey a lot of information when it comes to probable cause. Your Honors, here they said the word computer when they knew it was a modem. And the modem is only a portal. That portal contains no information, and it would not have any contraband on it. And tellingly, the government doesn't seize the modem. They never took it. They just left the modem there. It's so important. If it's going to have information, and that's what Charter went to, then why not seize it? Their actions belie their actual belief. And the final point, Your Honor, when it comes to this case, everything says that he would be turned away. Now, why use different words? I'm not inside the soul of Agent Hauser. But if you go in and you say it only goes to a modem, you have greater scrutiny. It's the same way that this court judges cases of omission. When you take away how many times did the snitch or the cooperating witness get arrested? Those are important details. And the recklessness is not putting those in there. I don't know the man's conscience, but I know that saying modem gets you sent back out there, do some more investigation. Saying computer gets you inside the house. He should not have been inside that house. Thank you. Thank you, Mr. Plotkin. Thank you, Ms. Altman. Case is taken under advisory.